UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
PAVEL LIFCHITS,                                    :
                                                   :
                                Plaintiff,         :
                                                   :          MEMORANDUM
    -against-                                      :          AND ORDER
                                                   :
KEY 4U TRANSPORTATION CORP. BUS,                   :          No. 20-CV-3749-JRC
                                                   :
                                Defendant.         :
                                                   :
-------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

On December 26, 2018, *pro se* plaintiff Pavel Lifchits ("plaintiff" or "Lifchits")

commenced this action in the United States District Court for the District of Massachusetts

against Integon National Insurance Co. ("Integon")[1] and Key 4U Transportation Corp. Bus

("Key 4U"), which is now pending before this Court with the consent of the parties, seeking

damages arising out of an automobile accident involving plaintiff's vehicle and a school bus

operated by Key 4U, and insured by Integon.  *See* Compl., Dkt. 1.  Plaintiff seeks to recover

damages for the loss of his vehicle and for his "loss of health."  Am. Compl., Dkt. 24 at ECF

page 5.[2]

On October 13, 2023, defendant Key 4U filed a motion for summary judgment.  *See* Def.

Key 4U's Mot. for Sum. J. ("Def. Mot."), Dkt. 123.  Plaintiff opposed Key 4U's motion, and on

November 7, 2023, plaintiff cross-moved for partial summary judgment.  *See* Pl.'s Mot. for

---

[1] On August 17, 2020, United States District Judge Allison D. Burroughs of the District of
Massachusetts granted Integon's motion to dismiss and transferred the action to this District.  *See*
Memorandum and Order dated Aug. 17, 2020, Dkt. 59.

[2] References to "ECF page" refer to the page designation issued by the Court's Electronic Case
Filing system.

Partial Sum. J. ("Pl. Mot."), Dkt. 125. For the reasons set forth below, this Court grants defendant's motion for summary judgment and denies plaintiff's motion.

## Background

The following facts are taken from defendant's statement pursuant to Local Civil Rule 56.1 ("Def. 56.1 Statement"), *see* Dkt. 123-1, plaintiff's 56.1 Counterstatement ("Pl. 56.1 Statement"), *see* Dkt. 130, and the admissible evidence submitted by the parties. These documents include discovery responses, transcripts of depositions, affidavits, medical records, a police report, insurance records, and statements of medical opinions. Annexed to defendant's moving papers include the following: defendant's discovery responses (Dkt. 123-6), plaintiff's discovery responses (Dkt. 123-8), the transcript of the deposition of non-party Eduardo Marfak (Dkt. 123-9) ("Marfak Dep."), the transcript of the deposition of plaintiff (Dkt. 123-10), the police accident report (Dkt. 123-12), plaintiff's medical records (Dkt. 123-14), affidavits/affirmations of Howard Deitsch[3] (Dkt. 123-15 at ECF pages 1-4), John Cassese (Dkt. 123-15 at ECF page 5), Diane Cooper, Esq. (Dkt. 123-15 at ECF pages 6-7), plaintiff (Dkt. 123-15 at ECF page 10), and plaintiff's wife, Elena Volkova (Dkt. 123-15 at ECF page 9), and documents from defendant's insurer, Integon (Dkt. 123-13), and the sworn reports of defendant's expert board-certified gastroenterologist, Dr. Bradley Rieders (Dkt. 123-16). Plaintiff did not submit any additional evidence either in opposition to defendant's motion or in support of plaintiff's motion for summary judgment.[4]

---

[3] Also spelled Dietsch in his affidavits.

[4] Plaintiff submitted a list of 40 "medical publications that claim that stress can cause stomach ulcers." *See* Dkt. 126 at ECF pages 2, 4-5. This list, without more, does not constitute admissible evidence that the Court may consider on a motion for summary judgment. *See Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 572 (E.D.N.Y. 2013) ("A published article is hearsay."), *aff'd in part, dismissed in part*, 594 F. App'x 723 (2d Cir. 2014).

On April 9, 2018, at approximately 5:30 p.m., plaintiff, who was eighty-eight years old, was traveling on Interstate 678, the Van Wyck Expressway ("the Van Wyck"), heading northbound in Queens, New York, when he was involved in a two-vehicle accident between his automobile, a 2007 Nissan sedan, and a yellow school bus owned by Key 4U and operated by its driver, non-party Eduardo Marfak ("Marfak").  *See* Am. Compl., Dkt. 24 at ECF page 5; Police Accident Report, Dkt. 123-12 at ECF pages 1-10; Def. 56.1 Statement ¶ 1; Pl. 56.1 Statement ¶ 1.  According to plaintiff, he was traveling in the right lane of three lanes of traffic on the Van Wyck, when his automobile was struck in the right front by the left front bumper of the yellow school bus, which was merging onto the Van Wyck and unlawfully entered the lane in which plaintiff was traveling.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 17-20, 23-25; Pl.'s Resp. to Interrog. Number 8, Dkt. 123-8 at ECF page 4.  Plaintiff maintained that he had been traveling in the right lane from the time he entered the Van Wyck.  *See* Lifchits Dep., Dkt. 123-10 at ECF page 18.  According to Marfak, he was traveling in the middle lane of three lanes of traffic on the Van Wyck, which were merging into two lanes of traffic, when plaintiff's vehicle attempted to merge into the middle lane from the left and struck the left front driver's side of the yellow school bus with the right front of plaintiff's vehicle.[5]  *See* Marfak Dep., Dkt. 123-9 at ECF pages 40-47; Police Accident Report, Dkt. 123-12 at ECF pages 1, 7.

The police diagram attached to the accident report shows the yellow school bus in the middle lane and plaintiff's vehicle in the lane to the left of the school bus.  *See* Police Accident Report, Dkt. 123-12 at ECF page 6.  Plaintiff testified that he told the police that he was not

---

[5] Defendant claims that "[t]he subject police report at 'Box 19' cited plaintiff with an 'unsafe lane change.'"  Def. 56.1 Statement ¶ 2.  Based on this Court's review of the police report, it does not contain any indication that plaintiff was cited for a violation.

injured or in any pain.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 44-45; Def. 56.1 Statement ¶¶ 4-5; Pl. 56.1 Statement ¶¶ 4-5.

Following the accident, plaintiff drove his vehicle from the scene of the accident to his son's house in Pelham, New York, approximately six miles away.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 25, 45-46; Def. 56.1 Statement ¶ 7; Pl. 56.1 Statement ¶ 7.  Two days later, plaintiff drove the vehicle back to Massachusetts.  *Id.*  Once back in Massachusetts, plaintiff continued to drive the car for approximately six months.  Lifchits Dep., Dkt. 123-10 at ECF pages 46, 50.

In the Amended Complaint, plaintiff alleges that his right forward fender, bumper cover, mud protector, wheel and headlight were damaged in the collision.  *See* Am. Compl., Dkt. 24 at ECF pages 5-6; *see also* Lifchits Dep., Dkt. 123-10 at ECF pages 24-25.  Plaintiff seeks $4,500.00 for damage to his vehicle and $78,000.00 for his "loss of health" as a result of the accident.  *See* Am. Compl., Dkt. 24 at ECF page 6.[6]  Specifically, plaintiff claims that he experienced physical effects from the collision, including periodic attacks of nausea, and vomiting, sometimes producing blood.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 57-59; *see also* Pl.'s Resp. to Interrog. Numbers 2 and 3.

Before the vehicle collision, plaintiff had rarely experienced stomach pains or nausea. *See* Lifchits Dep., Dkt. 123-10 at ECF pages 55, 58.  After first complaining to his primary care physician on October 24, 2018, plaintiff was referred to a gastroenterologist, who diagnosed plaintiff with a stomach ulcer, for which he was prescribed antibiotics.  *See id.* at 58-60, 61, 65-68.  After taking the antibiotics for approximately one month, plaintiff's symptoms resolved.  *Id.* at 70.  Since his symptoms had appeared shortly after the accident, plaintiff concludes that stress

---

[6] Plaintiff now seeks $10,000 for damage to his vehicle.  *See* Pl. Mot. for Partial Sum. J., Dkt. 125 at ECF page 5.

from the accident likely caused his stomach ulcer.  *See* Lifchits Dep. at ECF pages 67-68 ("The only thing I know is that I had nothing like that prior to the accident and after the accident I developed all those things.  So how come that this thing appeared the day of the accident and whether or not it is H-Pylori or not? I don't know."); Aff. of Pavel Lifchits ("Lifchits Aff."), Dkt. 123-15 at ECF page 10.  Plaintiff testified that no health professional told him that the subject car accident caused his ulcer.  *See* Lifchits Dep., Dkt. 123-10 at ECF page 71.

*Insurance Records*

On June 13, 2018, defendant's insurer received a police report from plaintiff by facsimile, notifying it of the subject accident.  *See* Integon Property Damage, Dkt. 123-13 at ECF page 1; Def. 56.1 Statement ¶ 9; Pl. 56.1 Statement ¶ 9.  On June 19, 2018, "Dispatch Request" noted that, since plaintiff did not speak English, to email plaintiff with "SCA [Appraisal Co.] Contact Info."  Integon Property Damage, Dkt. 123-13 at ECF page 2.  Accordingly, on June 19, 2018, "Dispatch" sent an email to plaintiff stating that an appraisal company had been assigned to inspect his vehicle, but that the appraiser had been unable to reach plaintiff to make an appointment.  *Id.* at ECF page 3.  The email requested that plaintiff contact SCA Appraisal Co. at a designated phone number to make arrangements to have his vehicle inspected.  *Id.*

On June 26, 2018, SCA Appraisal Company closed its file since it had not received any response from plaintiff.  *See id.* at ECF page 4.  By letter dated June 29, 2018, defendant's insurer advised plaintiff that he had failed to make his vehicle available for inspection and requested that plaintiff contact SCA Appraisal Company.  *See id.* at ECF page 5.

*Medical Records*

On May 29, 2018, less than two months after the subject accident, plaintiff presented to Steven M. Spiegel, M.D., a nephrologist, and reported that he was "doing well," had "no

complaints," "no new medical problems" and a "[g]ood appetite." *See* Progress Notes, Dkt. 123-14 at ECF page 1. Dr. Spiegel noted under the heading, "Review of Systems," that plaintiff had no "abdominal pain and nausea." *See id.* at ECF page 3.

On July 6, 2018, approximately three months after the subject accident, plaintiff presented to his primary care physician, Dr. Sergei Aish. *See* Progress Notes, Dkt. 123-14 at ECF page 7. At that time, Dr. Aish noted under the heading, "Review of Systems," that plaintiff was "negative for abdominal pain, blood in stool, constipation, diarrhea, heartburn and vomiting." *Id.*

On August 17, 2018, plaintiff again presented to Dr. Aish, who noted under "reason for visit" - "none." *Id.* at ECF page 12.

The first notation in plaintiff's medical records of any gastrointestinal complaints is almost seven months after the accident, when plaintiff presented to Dr. Aish, on October 24, 2018. *See id.* at ECF page 17; Def. 56.1 Statement ¶ 17; Pl. 56.1 Statement ¶ 17. Under "Review of Systems," Dr. Aish noted "[p]ositive for vomiting. Negative for abdominal pain, blood in stool, constipation, diarrhea and heartburn." Progress Notes, Dkt. 123-14 at ECF page 17. Dr. Aish's notes further explain that plaintiff "had two episodes of vomiting with brown material last month[.]" *Id.* at ECF page 18. Dr. Aish advised plaintiff "to call Dr. Taitelbaum and see her and get EGD he will do so." *Id.*

On December 1, 2018, approximately eight months after the subject accident, plaintiff again presented to Dr. Steven M. Spiegel and reported "no new medical problems" and that his "[a]ppetite is good." *Id.* at ECF page 20.

On December 21, 2018, Dr. Greta Taitelbaum performed an endoscopy on plaintiff, which showed "a small, non-bleeding and irregular shaped ulcer . . . in the gastric antrum.

6

Biopsies were taken." EGD Procedure Report, Dkt. 123-14 at ECF pages 26-27. The pathology findings from the biopsies taken on December 21, 2018 showed an H. Pylori ulcer. *Id.* at ECF page 30. The pathology findings from a follow-up endoscopy performed in February 2019 were negative for H. Pylori. *Id.* at ECF page 28.

Corroborating the medical records submitted, plaintiff testified that he did not seek medical attention following the accident until approximately seven months later, on October 24, 2018, when he first complained to Dr. Aish about vomiting. *See* Lifchits Dep., Dkt. 123-10 at ECF pages 58-59, 84-86; Def. 56.1 Statement ¶¶ 17, 19; Pl. 56.1 Statement ¶¶ 17, 19. Following the December 2018 endoscopy, plaintiff took antibiotics for about one month, after which the episodes of vomiting stopped. *See* Lifchits Dep., Dkt. 123-10 at ECF pages 69-70; Def. 56.1 Statement ¶ 24; Pl. 56.1 Statement ¶ 24. The follow-up endoscopy in February 2019 did not reveal an ulcer. *See* Lifchits Dep., Dkt. 123-10 at ECF page 70; Pl. 56.1 Statement ¶ 33; *see also* Lifchits Dep., Dkt. 123-10 at ECF page 73 (testifying that he has not seen a gastroenterologist in over two years). Plaintiff testified that no medical professional told plaintiff that the car accident caused his ulcer,[7] *see* Lifchits Dep., Dkt. 123-10 at ECF page 71, although he claims that Dr. Tanenbaum[8] told him that stress was the "most likely" cause of the ulcer, *see* Lifchits Aff., Dkt. 123-15 at ECF page 10. Although plaintiff's wife is a medical doctor, he did not tell her immediately that he had been vomiting since the accident. *See* Lifchits Dep., Dkt. 123-10 at ECF pages 83, 85-86; Pl. 56.1 Statement ¶ 18; Def. 56.1 Statement ¶ 18.

---

[7] Plaintiff also testified that his friend, a doctor in St. Petersburg, Russia, told plaintiff that there have been cases in Russia where an automobile accident caused a stomach ulcer. *See* Lifchits Dep. at ECF pages 71-72. Plaintiff also testified that "they all seem to agree that [the ulcer] was caused by the stress during that accident." *Id.* at ECF page 71.

[8] Plaintiff is presumably referring to Dr. Taitelbaum who performed the endoscopy on plaintiff. EGD Procedure Report, Dkt. 123-14 at ECF pages 26-27.

Defendant has submitted the expert report of board-certified gastroenterologist Dr. Bradley Rieders.  *See* Dkt. 123-16.  Dr. Rieders explains that gastric ulcers are commonly caused by H. Pylori bacteria, the regular use of non-steroidal anti-inflammatory medication and other medications such as steroids and anti-coagulants.[9]  *Id.* at ECF page 11.  In Dr. Rieders' opinion, the cause of plaintiff's gastric ulcer was the presence of H. Pylori bacteria.  *See id.*  Plaintiff's exposure to H. Pylori bacteria was unrelated to the subject accident.  *See id.*  The stress that plaintiff claims that he experienced as a result of the accident did not cause his gastric ulcer, nor did it adversely affect his recovery; on the contrary, plaintiff had an "excellent" recovery.  *Id.* at ECF pages 11-12.

In contrast, plaintiff did not submit any expert medical evidence.  At a conference held on August 23, 2022, this Court warned plaintiff of the consequences of failing to respond to defendant's expert report with his own expert.  *See* Min. Entry dated Aug. 23, 2022.

Further, plaintiff has not submitted any expert or documentary evidence to support his claim for property damage in the amount of $4,500, let alone $10,000.  In other words, he has not provided any photographs of the damage to his vehicle nor an independent estimate or appraisal of the damage to his vehicle.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages at 23, 32-33, 47-48; Answers to First Req. for the Produc. of Docs. Numbers 29-35, 41-42, Dkt. 123-8 at ECF page 8 (responding "Doesn't exist" to defendant's request for photographs of any damage to plaintiff's vehicle, estimates, and bills regarding any claim for property damage).  Likewise, plaintiff has not submitted any receipts for repairs made to his vehicle or offered any evidence of the pre-accident and post-accident value of his vehicle.  *See id.*

---

[9] During the relevant period, plaintiff took the anti-coagulant Warfarin.  *See* Medical Records, Dkt. 123-14 at ECF pages 2, 10, 14, 19, 21.

**Procedural Background**

On December 26, 2018, plaintiff filed his original complaint in the District of Massachusetts.  *See* Compl., Dkt. 1.  On April 8, 2019, Judge Burroughs dismissed without prejudice the Complaint for failing to satisfy the amount in controversy requirement for federal diversity jurisdiction.  *See* Dkts. 9, 10.  On appeal, on August 16, 2019, the U.S. Court of Appeals for the First Circuit vacated the District Court's Order and remanded back to the District Court, finding that it was unclear whether the District Court considered plaintiff's request for "'loss of health' damages."  *See* USCA J., Dkt. 21; Mandate of USCA, Dkt. 25.  Upon remand, Judge Burroughs directed plaintiff to file an amended complaint "in which the monetary relief . . . is itemized to allow the Court to determine the amount plaintiff claims for each of the following:  'loss of health,' damages to his car, and litigation expenses."  Order dated Aug. 20, 2019, Dkt. 22.

On August 26, 2019, plaintiff filed an amended complaint requesting $82,500 in damages, including $4,500 for damage to his vehicle and $78,000 for his "loss of health."  *See* Am. Compl., Dkt. 24 at ECF page 6.  On January 10, 2020, Integon filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.  *See* Mot. to Dismiss, Dkt. 38. On the same day, Key 4U filed a motion to dismiss for lack of subject matter and personal jurisdiction, and improper venue.  *See* Mot. to Dismiss, Dkt. 40.  On August 17, 2020, Judge Burroughs granted Integon's motion to dismiss for failure to state a claim, denied Key 4U's motion, and transferred venue of the action against Key 4U to this Court.  *See* Mem. and Order, Dkt. 59.

On January 30, 2023, plaintiff filed a motion for summary judgment, arguing that Marfak caused the accident resulting in damage to plaintiff's vehicle and that plaintiff developed a

stomach ulcer because of the stress from the accident.  *See* Dkt. 110.  On January 31, 2023, defendant Key 4U filed a cross-motion for summary judgment on the grounds that (1) plaintiff failed to make out a *prima facie* case as to his property damage claim; (2) plaintiff failed to make out a *prima facie* case as to his bodily injury claim; and (3) the injuries claimed by plaintiff do not rise to the level of the "serious injury" threshold requirement of section 5102(d) of the Comprehensive Motor Vehicle Insurance Reparations Act.  *See* Dkt. 109.

By Memorandum and Order dated September 22, 2023, this Court denied without prejudice the parties' cross-motions for summary judgment for failure to comply with Local Civil Rules 56.1 and 56.2.  *See* Mem. and Order, Dkt. 120.  The Court directed the parties to each file Rule 56.1 statements and defendant to serve plaintiff with the notice to *pro se* litigants required by Local Civil Rule 56.2.  *See id.* at 5.  As discussed, the Rule 56.2 notice generally explains the summary judgment process and warns a *pro se* litigant that dismissal of the complaint may result in the event of a failure to "respond to th[e] motion on time by filing sworn affidavits and/or other documents as required by Rule 56(c) of the Federal Rules of Civil Procedure and by Local Civil Rule 56.1."  Local Civ. R. 56.2 ("you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising specific facts that support your claim").

The parties re-filed their motions on October 13 and November 7, 2023, respectively. Defendant submitted a Rule 56.1 statement in support of its motion and served plaintiff with the required Local Civil Rule 56.2 notice.  *See* Dkt. 123-1; Dkt. 123 at ECF pages 1-3.  Now, plaintiff has responded with an opposing Rule 56.1 statement, although for the most part, plaintiff fails to cite to admissible evidence that would controvert any of the facts asserted in defendant's 56.1 Statement.  *See* Pl. 56.1 Statement, Dkt. 130.

**Discussion**

I.    **Defendant's Motion for Summary Judgment**

    A.    **Summary Judgment Standards**

Summary judgment is warranted where the parties' pleadings and submissions create "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008).  "A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue of material fact exists where "there is sufficient evidence favoring the nonmoving party for a [fact-finder] to return a verdict for that party."  *Anderson*, 477 U.S. at 249. If a court finds that a material issue could "reasonably be resolved in favor of either party," then summary judgment is not appropriate.  *See id.* at 250.  In making its decision, a court must resolve all ambiguities and draw all inferences in favor of the nonmoving party.  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  Where a court is confronted with cross-motions for summary judgment, each motion should be addressed individually, and all reasonable inferences must be drawn "against the party whose motion is under consideration." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 46 (2d Cir. 2007) (internal quotation marks and citation omitted).

The party moving for summary judgment bears the initial burden of demonstrating the absence of any disputed issue of material fact.  *See Celotex*, 477 U.S. at 323; *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  If the moving party meets this burden, then the nonmoving party must present facts to show that a genuine issue does, in fact, exist.  *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party may not rely solely on mere "conclusory allegations or unsubstantiated speculation" in its attempt to defeat a motion for summary judgment.  *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Rather, the nonmoving party must make a showing sufficient to demonstrate "the existence of [each] element essential to [its] case, . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.  If the nonmoving party's evidence is "merely colorable . . . or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  In sum, to succeed in opposing a motion for summary judgment, the nonmoving party must offer evidence to show that "its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323-24).  However, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

12

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and are "held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).  Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).  Where the *pro se* litigant is served with a Local Civil Rule 56.2 notice, he is "then not excused from meeting the requirements of Local Rule 56.1." *Hinds v. Chexsystem Consumer Rel.*, No. 14-CV-342, 2015 WL 5794256, at *2 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks and citation omitted).

## B.   New York No-Fault Law

New York's "no-fault" insurance scheme restricts the rights of those injured in automobile accidents to seek recovery through the courts for damage caused by others.[10]  *See Mason v. United States*, No. 19-CV-1360, 2022 WL 17489206, at *4 (E.D.N.Y. Nov. 22, 2022), *report and recommendation adopted*, 2022 WL 17489937 (E.D.N.Y. Dec. 7, 2022); N.Y. Ins. Law § 5101, *et seq.*  The purpose of the limitation is to "weed out frivolous claims and limit recovery to significant injuries." *Bewry v. Colonial Freight Sys.*, No. 01-CV-5634, 2022 WL

---

[10] Since the accident at issue occurred in New York, New York state law applies.  *See Avlonitis v. United States*, No. 16-CV-2521, 2020 WL 1227164, at *5 (E.D.N.Y. Mar. 13, 2020) ("Because the motor vehicle collision underlying this action occurred in New York, New York tort law applies.") (internal quotation marks and citation omitted).

13

31834434, at *2 (S.D.N.Y. Dec. 17, 2022); *see Licari v. Elliott*, 57 N.Y.2d 230, 236 (N.Y. 1982) ("There can be little doubt that the purpose of enacting an objective verbal definition of serious injury was to significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium.") (internal quotation marks and citation omitted).

More specifically, under New York Insurance Law section 5104(a), a person injured in an automobile accident has "no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss." N.Y. Ins. Law § 5104(a). "Serious injury" is a defined term in New York Insurance Law § 5102:

> "Serious injury" means a personal injury which results in [1] death; dismemberment; significant disfigurement; [2] a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; [3] permanent consequential limitation of use of a body organ or member; [4] significant limitation of use of a body function or system; or [5] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). To recover for personal injuries arising from an automobile accident, a plaintiff must prove that he sustained a "serious injury" as defined above and that the injury was proximately caused by the accident. *See Conde v. United States*, No. 19-CV-8506, 2021 WL 3604701, at *5 (S.D.N.Y. Aug. 13, 2021); *Evans v. United States*, 978 F. Supp. 2d 148, 162-64 (E.D.N.Y. 2013).

In addition, under the No-Fault law, a plaintiff may not recover for "basic economic loss," such as medical expenses or lost wages, unless such losses exceed $50,000. *See* N.Y. Ins. Law § 5102(a). Property damage to an automobile is not included within the limitations that govern "basic economic loss" under Insurance Law § 5102. *See Skolen v. United States*, No. 12-

14

CV-515, 2017 WL 1472909, at *3 (W.D.N.Y. Apr. 25, 2017); *Thornton v. Husted Dairy, Inc.*, 23 N.Y.S.3d 760, 762 (App. Div. 4th Dep't 2015).

In support of its motion for summary judgment, defendant does not address the issue of liability for the collision, arguing instead that (1) plaintiff is barred from recovering for his property damage claim because he has failed to offer any expert or documentary evidence to substantiate his claim, (2) plaintiff cannot recover for personal injuries because he did not sustain a "serious injury" as defined under N.Y. Ins. Law § 5102(d), and (3) any injuries plaintiff suffered are not causally-related to the collision.

### C.    Claim for Property Damage

Plaintiff claims that he suffered $4,500 in property damage to his vehicle.  *See* Am. Compl. at ECF pages 5-6.

To prove negligence, plaintiff must show that (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a proximate result of the breach.  *See Thomas v. Cnty. of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003); *Solomon by Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (N.Y. 1985).  "[W]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *See Feis v. U.S.*, 394 F. App'x 797, 798-99 (2d Cir. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).  Here, plaintiff has failed to show any evidence that his vehicle sustained damage caused by defendant. Accordingly, the Court dismisses plaintiff's property damage claim.

"[G]enerally[,] damage to personal property is measured by the difference between the market value of the property immediately before and immediately after the harm was inflicted."

*Schwartz v. Crozier*, 565 N.Y.S.2d 567, 568 (App. Div. 3d Dep't 1991) (quoting *Gass v. Agate Ice Cream*, 264 N.Y. 141, 143 (N.Y. 1934)); *see Franklin Corp. v Prahler*, 932 N.Y.S.2d 610, 614-15 (App. Div. 4th Dep't 2011); N.Y. Pattern Jury Instr. -- Civil 2:311.  "[W]hen the property damaged is an automobile, damages may also be established by demonstrating the reasonable cost of the repairs (*see, e.g.*, [New York State Civil Practice Law and Rules ("C.P.L.R.") §] 4533-a), so long as that cost is less than the diminution in market value resulting from the injury and the repairs do not exceed the value of the automobile as it was prior to the injury."  *Schwartz*, 565 N.Y.S.2d at 568 (quoting *Gass*, 264 N.Y. at 143); *see U-R Rite Auto Rentals & Leasing, LLC v. Conklin*, 990 N.Y.S.2d 440(Table), at *2 (N.Y. City Ct. 2014) ("the measure of damages for a totally destroyed vehicle is the difference between the market value of the vehicle before destruction and the salvage value of the wreckage").  "Of course, if plaintiff proves neither diminution nor cost of repairs, the property damage action must be dismissed."  N.Y. Pattern Jury Instr. -- Civil 2:311.  A "plaintiff may be able to prove damages through the use of lay opinion testimony" or documentary evidence.  *Tulin v. Bostic*, 544 N.Y.S.2d 88, 89 (App. Div. 3d Dep't 1989).  Expert testimony is not required.  *Id.* at 89.  However, in this case, plaintiff has not provided any evidence that would satisfy a *prima facie* case.  *See Evans*, 978 F. Supp. 2d at 173-74; *Murphy v. Lichtenberg-Robbins Buick*, 424 N.Y.S.2d 809 (App. Div. 1978) ("Plaintiff may prove the amount of damages by introduction into evidence of competent expert testimony or by proper proof that the necessary repairs have been made and paid for.").  Here, plaintiff did not submit expert testimony, proof that repairs to his vehicle were necessary or that plaintiff paid for those repairs.  In the absence of any admissible evidence in support of plaintiff's property damage claim, it must be dismissed.

 For example, at his deposition, plaintiff testified that he received a repair estimate of

approximately $2,000, but he does not have any written evidence of the estimate and he did not

pay for the repairs.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 46-48.  Plaintiff's testimony

regarding the estimate is hearsay and, therefore cannot defeat a motion for summary judgment.

A party's testimony must be based on actual personal knowledge, not speculation, conclusory

allegations, information and belief, or hearsay.  *See Chansamone v. IBEW Local 97*, 523 F.

App'x 820, 822 n.4 (2d Cir. 2013) ("We do not consider [plaintiff's] testimony that co-workers

told him that [a hiring supervisor] would not hire him 'as an Asian,' because that testimony is

inadmissible hearsay."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988);

Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602, 701(a).  In any event, an "estimate is no more than a

guess as to the cost of repairs and, as such, damages cannot be awarded on the basis of such

conjecture or guesswork."  *Murphy*, 424 N.Y.S.2d at 809; *see Haber v. Gutmann*, 882 N.Y.S.2d

780, 783 (App. Div. 3d Dep't 2009) (denying damages claim where expert provided estimates

for overall cost of repairing, but not cost of repairing any specific defect).  Thus, plaintiff's

testimony regarding the estimate is also unduly speculative.

  At his deposition, plaintiff explained that the damages he seeks in the amount of $4,500

is largely based on his approximation that a comparable pre-accident vehicle would have cost

$4,000 to purchase from a dealership.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 81-82; Pl.

56.1 Statement ¶ 40.[11]  In addition, in his interrogatory responses, plaintiff stated that he spent

approximately $500 on materials to repair his vehicle himself, although those repairs were

---

[11] In support of his motion for partial summary judgment, plaintiff now argues that he is entitled
"to recover $10,000 from the defendant, instead of the previously stated $4,500.00."  *See* Pl.
Mot. for Partial Sum. J., Dkt. 125 at ECF page 5.  According to plaintiff, "[i]n mid-2019, a
Nissan that was built in 2007 with approximately 100,000 miles on it cost 4,000.00 at the dealer.
This price was stated by the plaintiff in the claim in case 20 CV 3749.  Today the same car costs
$9000.00-10000.00."  *Id.*  However, plaintiff has not submitted any evidence to substantiate his
claimed damages.

insufficient for the vehicle to pass its annual vehicle inspection.  *See* Pl.'s Resp. to Interrog.

Number 8, Dkt. 123-8 at ECF page 4; Pl. 56.1 Statement ¶ 42; *see also* Lifchits Dep. at ECF

pages 48-50.  Notwithstanding these naked assertions, plaintiff has failed to submit any direct

admissible evidence to support his property damage claims.  *See Farrell v. Klapach*, 262

N.Y.S.2d 203, 204 (App. Div. 2d Dep't 1965) ("the court's dismissal of Farrell's cause of action

for property damage in the course of trial was proper by reason of his failure to present proof of

the reasonable value of the repairs to his automobile"); *U-R Rite Auto Rentals*, 990 N.Y.S.2d

440, at *2.

For example, plaintiff did not submit any photographs of the alleged damage, a written

estimate of repairs, or any receipts for the repairs that he claims he made to his vehicle.  *See U-R

Rite Auto Rentals*, 990 N.Y.S.2d 440, at *2 (dismissing action where "[p]laintiff submitted no

proof regarding the pre-accident market value of the rental car, no proof that the rental car was

totaled, and no photographs of the damage to the rental car").  Although plaintiff states that he

"junked" the car, *see* Resp. to Interrog. Number 8, Dkt. 123-8 at ECF page 4, he has submitted

no evidence supporting his estimate of $4,000 for the pre-accident market value of the car,[12] or

to support his claim that the car was totaled.[13]  *See Owens v. State*, 464 N.Y.S.2d 870, 872 (App.

---

[12] Marfak testified that plaintiff's vehicle was rusted and had substantial damage in areas that were not impacted during the accident.  *See* Marfak Dep., Dkt. 123-9 at ECF pages 53-55; *see also* Aff. of Howard Deitsch dated June 17, 2021 at ¶ 9, Dkt. 123-15 at ECF page 2 (stating that plaintiff's vehicle "had damage visible all around the vehicle, including on all parts of the vehicle that had not been involved in the impact that day").  Plaintiff testified that the vehicle was not damaged before the accident, although he acknowledged that it was rusting and the paint was flaking off.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 20, 79-80.

[13] Plaintiff testified that he drove the vehicle from the scene of the accident to his son's house in Pelham, New York six miles away, and then, two days later, drove his vehicle back to Massachusetts.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 25, 45-46; Pl. 56.1 Statement ¶ 7. Once back in Massachusetts, plaintiff continued to drive the car for approximately six months. Lifchits Dep., Dkt. 123-10 at ECF pages 46, 50.

Div. 3d Dep't 1983) (reversing award of an unspecified sum for property damage to claimant's automobile); *Harold v. Schultz*, 2021 N.Y. Misc. LEXIS 18056, at *5 (Sup. Ct. Rockland Cnty. 2021) (granting summary judgment dismissing property damage claim where plaintiff submitted no proof to support contention as to the value of car).  Here, plaintiff has failed to sustain his burden on proof with respect to the property damage.[14]

 The *Evans* case is instructive.  There, the District Court granted defendant's motion for summary judgment on plaintiff's claim for property damage under similar circumstances.  978 F. Supp. 2d at 172.  In that case, plaintiff testified that he received an estimate for repairs, but plaintiff provided no documentary evidence to support his claim.  *Id.*  The court found that in the absence of any "direct admissible evidence to support his property damage claim," plaintiff had failed to raise a triable issue of fact and dismissed the claim.  *Id.*

In sum, plaintiff's vague testimony regarding the damage to his vehicle alone is insufficient to defeat summary judgment.  *See Owens*, 464 N.Y.S.2d at 872 ("The only proof was claimant's testimony that he paid about $700 for the car, made repairs costing about $1,000, and

---

[14] Plaintiff repeatedly places blame on the defendant for his failure to present any evidence in support of his claim for damage to his vehicle.  *See, e.g.*, Dkt. 129 at ECF page 2 ("the defendant is the direct culprit for the lack of such documentation"); Dkt. 125 at ECF page 5 ("the defendant disrupted the assessment (see above), and the plaintiff was forced to hand over the car to the junkyard").  Plaintiff does not explain how the moving defendant is responsible for plaintiff's failure to provide an estimate for repairs or an appraisal of the damage to plaintiff's vehicle.  As this Court previously observed, "[p]laintiff had the burden of scheduling the inspection, and plaintiff is no longer in possession of the vehicle."  Min. Entry dated Aug. 23, 2022.  Moreover, "nothing precluded plaintiff from conducting an inspection of his own vehicle."  S*ee* Min. Entry dated Nov. 28, 2022.  Regardless of who is at fault for the failure to make the subject car available for inspection by defendant's insurance company, obviously, plaintiff could have taken photographs of his own vehicle and obtained a written estimate or appraisal within the six months between the time of the accident and when he disposed of the vehicle.  In addition, defendant submitted affidavits from its owner, the head of defendant's insurer's property damage department, and from counsel for defendant averring that defendant did not have any photographs of plaintiff's vehicle.  *See* Dkt. 123-15 at ECF pages 1-7.

that it was totally destroyed.  The failure to prove fair market value before and after the loss

renders the proof insufficient to sustain any award for the loss."); *cf. Davis v. United States*, No.

1:07-CV-292, 2012 WL 88307, at *7 (N.D.N.Y. Jan, 11, 2012) (failure of plaintiff to provide

"credible" evidence of past or future economic loss in excess of $50,000 warrants summary

judgment for defendant).  Under the circumstances, no reasonable jury could set the amount of

damages.

###        D.       Causation

One essential element of a negligence claim is that "the breach proximately caused

plaintiff's injuries."  *Kane v. United States*, 189 F. Supp. 2d 40, 51 (S.D.N.Y. 2002).  In order to

recover for non-economic loss related to a personal injury allegedly sustained in a motor vehicle

accident under section 5102, "a plaintiff is required to present competent, nonconclusory expert

evidence sufficient to support a finding not only that the alleged injury is 'serious' within the

meaning of Insurance Law § 5102(d), but also that the injury was proximately caused by the

accident at issue."  *Carter v. Full Service, Inc.*, 815 N.Y.S.2d 41, 43 (App. Div. 1st Dep't 2006)

(citations omitted); *see Mary o/b/o A.M. v. Pro-N2 Ltd.*, No. 20-CV-289, 2023 WL 9603887, at

*11 (W.D.N.Y. Nov. 28, 2023); *Pommells v. Perez*, 4 N.Y.3d 566, 574-75 (N.Y. 2005)

(affirming grant of summary judgment to defendants where, *inter alia*, "[p]laintiff's submission

left wholly unanswered the question whether the claimed symptoms diagnosed by [his

orthopedist] were caused by the accident," or, alternatively, by a preexisting kidney disorder)

(citations omitted).  On a motion for summary judgment, the defendant has the initial burden of

making an "evidentiary showing" that plaintiff's injury was not caused by the accident.  *See

Welch v. Ayala*, No. 19-CV-3455, 2023 WL 5387551, at *7 (S.D.N.Y. Aug. 22, 2023); *Evans*,

978 F. Supp. 2d at 166.  "Where a plaintiff fails to rebut a defendant's prima facie showing that

the plaintiff 'did not sustain a serious injury as the result of the subject accident, defendant is entitled to summary judgment.'" *Conde*, 2021 WL 3604701, at *7 (quoting *Agard v. Bryant*, 805 N.Y.S.2d 348, 349 (App. Div. 1st Dep't 2005)); *see Welch*, 2023 WL 5387551, at *10.

Defendant has presented a *prima facie* case that plaintiff's ulcer was not caused by the accident at issue, but instead is attributable to the presence of H. Pylori bacteria. Here, defendant submits the expert report of Dr. Bradley Rieders, a board-certified gastroenterologist. Based on plaintiff's medical records, Dr. Rieders opines that the motor vehicle accident at issue was not a proximate cause of plaintiff's H. Pylori ulcer. *See* Dkt. 123-16 at ECF page 11. In Dr. Rieders' opinion, the cause of plaintiff's gastric ulcer was the presence of H. Pylori bacteria. *See id.* Moreover, plaintiff's exposure to Pylori bacteria was unrelated to the subject accident. *See id.*

In response to plaintiff's arguments, Dr. Rieders explains that any stress that could have been caused by the accident did not cause plaintiff's gastric ulcer, nor did it adversely affect plaintiff's recovery. *Id.* at ECF pages 8-9, 11-12. In fact, even if Dr. Rieders assumes that plaintiff vomited as soon as the day following the accident, it does not change Dr. Rieders' opinion that plaintiff's ulcer was caused by the presence of H. Pylori bacteria, rather than stress caused by the accident. *Id.* at ECF page 9. In addition, the delay in plaintiff seeking treatment for his purported injury undermines his causation argument. *See id.* at ECF page 11 ("It is noted that this accident was on April 9, 2018 and that the diagnosis of gastric ulcer, H. Pylori, was made on December 21, 2018, eight months later."); *see also Flores v. Bergtraum*, No. 20-CV-1240, 2022 WL 125372, at *16 (S.D.N.Y. Jan. 13, 2022) (rejecting doctor's report based on examination six months after accident, in addition to the lack of corroborative evidence indicating a causal connection), *aff'd*, 2023 WL 3047968 (2d Cir. Apr. 24, 2023).

Accordingly, defendant has satisfied its initial burden on summary judgment and the

burden then shifts to plaintiff to prove causation.  *See Spencer v. Chung*, No. 20-CV-599, 2021

WL 5360430, at *1 (S.D.N.Y. Nov. 17, 2021) (finding *prima facie* case based on affidavits of

radiologist and orthopedist asserting that plaintiff's impairments were either transient, the result

of a preexisting degenerative condition, or the result of a prior injury); *Smith v. Gray*, No. 19-

CV-2169, 2021 WL 3603588, at *5 (E.D.N.Y. Aug. 13, 2021) (finding that defendant

established a *prima facie* case where defendant's expert opined that "injuries to the cervical and

lumbar spine depicted in the MRIs were degenerative changes which could not have resulted

from the incident of record as described"), *aff'd*, 2022 WL 1418973 (2d Cir. May 5, 2022);

*Evans*, 978 F. Supp. 2d at 168 (finding defendant satisfied its burden that plaintiff's injuries were

not caused by accident).

To survive summary judgment, plaintiff must rebut defendant's evidence and establish

that the injuries he sustained were the result of the accident.  *See Conde*, 2021 WL 3604701, at

*7; *Evans*, 978 F. Supp. 2d at 171 ("Plaintiff is also required to rebut the Defendant's evidence

with respect to causation with his own evidence.").  In fact, "a plaintiff is required to present

competent, non-conclusory expert evidence sufficient to support a finding . . . that the injury was

proximately caused by the accident at issue."  *Carter*, 815 N.Y.S.2d at 43; *see Mary*, 2023 WL

9603887, at *11; *Watson-Tobah v. Royal Moving & Storage, Inc.*, No. 13-CV-7483, 2014 WL

6865713, at *11 (S.D.N.Y. Dec. 5, 2014); *see also Barnes v. Anderson*, 202 F.3d 150, 159 (2d

Cir. 1999) ("[E]xpert medical opinion evidence is usually required to show the cause of an injury

or disease because the medical effect on the human system of the infliction of injuries is

generally not within the sphere of the common knowledge of the lay person." (citations

omitted)).  "Courts applying New York law repeatedly have entered summary judgment in favor

of defendants in personal injury actions where there was a lack of nonconclusory medical

testimony establishing proximate causation." *Watson-Tobah*, 2014 WL 6865713, at *14. "Plaintiff's own self-serving and conclusory testimony" regarding causation is, "in the absence of corroborating objective medical evidence, insufficient to raise a triable issue for submission to the jury." *Id.* at *11 (quoting *Carter*, 815 N.Y.S.2d at 43-44) (internal quotation marks omitted). Even a plaintiff's treating physician's opinion will be rejected if it "fails to give any objective basis for concluding that [the] plaintiff's alleged limitations resulted from the [] accident." *Montgomery v. Pena*, 798 N.Y.S.2d 17, 18 (App. Div. 1st Dep't 2005).

Here, plaintiff's failure to offer objective medical evidence to rebut Dr. Reiders' opinion and prove causation requires dismissal of his personal injury claim. *See Conde*, 2021 WL 3604701, at *11-*12; *Watson-Tobah*, 2014 WL 6865713, at *11; *Pommells*, 4 N.Y.3d at 575 ("Plaintiff's submission left wholly unanswered the question whether the claimed symptoms diagnosed by Dr. Rose were caused by the accident."); *Nowak v. Breen*, 866 N.Y.S.2d 423, 425 (App. Div. 3d Dep't 2008) ("plaintiffs have failed to submit any objective medical evidence sufficient to raise a triable issue of fact regarding the existence of a serious injury causally related to this accident"). Plaintiff's own self-serving testimony that his ulcer was caused by stress stemming from the accident is insufficient to raise a triable issue of fact. *See, e.g., Watson-Tobah*, 2014 WL 6865713, at *11; *Carter*, 815 N.Y.S.2d at 43 (stating that plaintiff's own self-serving testimony is, in the absence of corroborating objective medical evidence, insufficient to raise a triable issue for submission to the jury).

Plaintiff's testimony cannot serve as a substitute for objective medical evidence as required to overcome defendant's evidence regarding causation. *See Rhone v. United States*, No. 04-CV-5037, 2007 WL 3340836, at *9 (S.D.N.Y. Nov. 9, 2007). Plaintiff does not rely on any other evidence, such as treating physicians' reports, to dispute Dr. Reiders' opinion that

plaintiff's ulcer was unrelated to the subject accident. *See Conde*, 2021 WL 3604701, at *12; *Avlonitis*, 2020 WL 1227164, at *7-*8 (finding "no credible evidence supporting Plaintiff's claim that his injuries were caused by" accident at issue); *Watson-Tobah*, 2014 WL 6865713, at *14; *Rhone*, 2007 WL 3340836, at *8 ("[W]ithout consideration of [plaintiff's] medical history and the persuasive evidence of a degenerative condition put forth by the Government," the evidence introduced by plaintiff is "mere speculation."). Thus, plaintiff has failed to introduce evidence to show that an issue of fact exists with respect to causation. In sum, plaintiff was required to refute the opinion of Dr. Reiders, but failed to do so.

The Court is mindful that "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 145 (2d Cir. 2002). However, plaintiff has failed to put forth any objective medical evidence to rebut the defendant's expert's conclusions. In the absence of any such evidence, the Court concludes that plaintiff cannot establish that the subject accident caused his ulcer, and defendant is entitled to summary judgment on plaintiff's claim for personal injuries.

Given the Court's holding that there is no triable issue of fact as to whether the defendant proximately caused plaintiff's injuries, the Court need not consider defendant's further argument that plaintiff cannot meet the requisite "serious injury" threshold. *See Conde*, 2021 WL 3604701, at *5. Nevertheless, as set forth below, the Court concludes that plaintiff has failed to raise an issue of triable fact on that issue as well.[15]

---

[15] Since the Court finds that plaintiff did not suffer a "serious injury" and his injuries were not caused by the subject accident, the Court need not determine who was negligent for purposes of defendant's summary judgment motion. *See Avlonitis*, 2020 WL 1227164, at *8 n.9.

E.      **Serious Injury Threshold**

Defendant also argues that plaintiff has failed to satisfy the "serious injury" threshold requirement of section 5102(d) of the Insurance Law.

"[A] court should decide the threshold question of whether the evidence would warrant a jury finding that the injury qualifies as a 'serious injury.'" *Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010).  In the summary judgment context, the defendant has the initial burden "to make an evidentiary showing that the plaintiff has not sustained a serious injury as a matter of law." *Evans*, 978 F. Supp. 2d at 162-63 (internal quotation marks and citation omitted); *see Yong Qin Luo*, 625 F.3d at 777; *Mason*, 2022 WL 17489206, at *4.  "The defendant may satisfy this initial burden with unsworn reports by the plaintiff's physicians or with sworn affidavits or affirmations by the defendant's own retained physicians." *Evans*, 978 F. Supp. 2d at 163 (quoting *Thomas v. O'Brien*, No. 08-CV-3250, 2010 WL 785999, at *7 (E.D.N.Y. Feb. 26, 2010)); *see Kang v. Romeo*, No. 18-CV-4033, 2020 WL 4738947, at *9 (E.D.N.Y. Aug. 14, 2020).  "A defendant may satisfy this burden by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them." *Kang*, 2020 WL 4738947, at *9 (internal quotation marks and citation omitted).

Once the defendant has met its burden, the burden shifts to the plaintiff to "overcome [the defendant's] motion by demonstrating that [he] sustained a serious injury." *Evans*, 978 F. Supp. 2d at 163 (quoting *Gaddy v. Eyler*, 79 N.Y.2d 955 (N.Y. 1992)); *see Mason*, 2022 WL 17489206, at *4.  To meet his burden, the plaintiff must submit "objective proof of an injury" in the form of "sworn affidavits or reports by physicians, or sworn medical test records, such as MRI reports." *Evans*, 978 F. Supp. 2d at 163; *see Joseph v. STMR Inc.*, No. 19-CV-125, 2022 WL 5173669, at *6 (E.D.N.Y. Aug. 24, 2022); *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d

25

345, 350-51 (N.Y. 2002).  "Subjective complaints alone are not sufficient."  *Joseph*, 2022 WL

5173669, at *6 (quoting *Comba v. United States*, 535 F. Supp. 3d 97, 107 (E.D.N.Y. 2021));

*Toure*, 98 N.Y.2d at 350.  "Defendant is entitled to judgment as a matter of law if the Court finds

that no reasonable jury could find that plaintiff has sustained a serious injury."  *Mason*, 2022 WL

17489206, at *4; *Joseph*, 2022 WL 5173669, at *6.

As noted above, section 5102(d) carefully delimits what constitutes "serious injury"

sufficient to exempt a victim from the no-fault scheme and to permit recovery for non-economic

loss.  *See* N.Y. Ins. Law § 5102(d); Section I.B, above.  New York courts require "objective

proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold."  *Toure*, 98

N.Y.2d at 350.

In this case, it is uncontroverted that plaintiff did not suffer an injury that falls within the

first two categories of section 5102(d):  he did not suffer (1) death, dismemberment, or

significant disfigurement or (2) a fracture, loss of a fetus, or permanent loss of use of a body

organ, member, function, or system.  Although it is unclear which, if any, category plaintiff

claims he qualifies for, he would have to rely on one of the latter three categories:  (1) a

permanent consequential limitation of use of a body organ or member; (2) a significant limitation

of use of a body function or system; or (3) a nonpermanent medically determined injury or

impairment that prevented him from performing substantially all of the material acts which

constitute his usual and customary daily activities for not less than ninety days during the one

hundred eighty days immediately following the accident.  N.Y. Ins. Law § 5102(d).  The Court

concludes that plaintiff has failed to satisfy any of these three categories of "serious injury."

### 1.    Permanent Consequential or Significant Limitation[16]

To establish a serious injury based on permanent limitation, a plaintiff must "produce

competent medical evidence that [his] injuries are permanent," *Ventra v. United States*, 121 F.

Supp. 2d 326, 333 (S.D.N.Y. 2000), and result in "an important and qualitative limitation of use

of a body part," *Evans*, 978 F. Supp. 2d at 165.   To establish a serious injury based on the

significant limitation clause of Insurance Law § 5102(d), a "plaintiff must show a significant

limitation" to a body function "in both degree and duration."   *Gualtieri v. Farina*, 283 F. Supp.

2d 917, 925-26 (S.D.N.Y. 2003).

Here, defendant has made a *prima facie* case that plaintiff did not sustain a permanent or

significant limitation.   Based on the written report of defendant's expert gastroenterologist, Dr.

Rieders, who reviewed plaintiff's medical records, plaintiff's H. Pylori ulcer "was appropriately

treated with antibiotics and when re-examined [two months] later the ulcer was gone."   Dkt. 123-

16 at page ECF 11; *see also id.* at ECF page 9 (plaintiff "made a complete and uneventful

recovery").   Defendant's evidence is objectively-based, admissible and credible.   *See Conde*,

2021 WL 3604701, at *7 (finding *prima facie* case that plaintiff's injuries were not "permanent"

nor "significant" based on defendant's expert testimony that plaintiff's sprains would have

resolved in 3 to 6 months).   This is clearly sufficient to meet defendant's threshold burden.

In response, plaintiff has failed to submit competent, objective medical evidence showing

that any physical limitation has endured without improvement from the time of the accident to

date.   Plaintiff has not submitted any medical reports, medical records, testimony or other

---

[16] Because both a "permanent consequential limitation" and a "significant limitation" are
similarly construed, courts often address both categories together.   *See Mary*, 2023 WL 9603887,
at *8; *Avlonitis*, 2020 WL 1227164, at *6; *Gaddy*, 79 N.Y.2d at 957 (evaluating a plaintiff's
evidence under both the "permanent consequential limitation" and "significant limitation" prongs
simultaneously).

evidence from a medical provider that demonstrates that his alleged injuries are permanent or consequential.  Further, plaintiff has failed to provide any objective proof of a significant limitation.  "A plaintiff's description of his pain and suffering, standing alone without other objective indicia, cannot support a claim of significant limitation." *See Ciappetta v. Snyder*, No. 15-CV-4427, 2021 WL 536131, at *9 (E.D.N.Y. Jan. 22, 2021) (quoting *Jones v. U.S.*, 408 F. Supp. 2d 107, 119 (E.D.N.Y. 2006)), *report and recommendation adopted*, 2021 WL 512462 (E.D.N.Y. Feb. 11, 2021).

### 2.   90/180 Day Limitation

The last category of serious injury provided in section 5102(d) requires that plaintiff suffered injuries or impairments that prevented him from "performing substantially all of [his] usual and customary daily activities for at least 90 days during the first 180 days immediately after the accident." *Joseph*, 2022 WL 5173669, at *8 (quoting *Comba*, 535 F. Supp. 3d at 110-11).  A plaintiff must demonstrate that he was inhibited from "'performing his usual activities to a great extent, rather than some slight curtailment' for ninety of the 180 days following the accident." *Evans*, 978 F. Supp. 2d at 166 (quoting *Licari*, 57 N.Y.2d at 236)).  "[S]elf-serving statements are insufficient" to a establish a serious injury under the 90/180 day category.  *See Escoto v. United States*, 848 F. Supp. 2d 315, 330 (E.D.N.Y. 2012); *see also Blake v. Portexit Corp.*, 893 N.Y.S.2d 28, 30 (App. Div. 1st Dep't 2010) (testimony that a plaintiff "for the first six months after the accident . . . could not play sports with his children and had difficulty walking, going up stairs, and getting into cars" failed to raise issue of fact as to 90/180-day claim).

As discussed above, plaintiff's H. Pylori ulcer resolved after undergoing treatment with antibiotics for one month.  *See* Dkt. 123-16 at ECF pages 8-12; *see also* Lifchits Dep., Dkt. 123-

10 at ECF pages 69-70 (testifying that the vomiting stopped after taking antibiotics for less than one month); *id.* at ECF pages 73-74 (acknowledging that he has not been told that the ulcer has returned).  The fact that there was no need for further treatment suggests an absence of serious injury.  *See Avlonitis*, 2020 WL 1227164, at *5; *Evans*, 978 F. Supp. 2d at 172-73.  There is simply no evidence, including plaintiff's own testimony, that plaintiff was not able to perform substantially all of his usual and customary activities after the accident.  *See Ciappetta*, 2021 WL 536131, at *11.  Although plaintiff testified that he was advised to avoid spicy foods and "pickled cucumbers," *see* Lifchits Dep., Dkt. 123-10 at ECF page 74, an adjustment to plaintiff's diet does not rise to the level of "substantially all of the [p]laintiff's normal activities."  *Gil v. Western Exp., Inc.*, No. 15-CV-9611, 2017 WL 4129634, at *12 (S.D.N.Y. Sept. 14, 2017) ("difficulty completing household chores, driving long distances, lifting certain heavy items, and walking on stairs" did not qualify as serious under the 90/180 day category); *see Tenzen v. Hirschfeld*, No. 10-CV-50, 2011 WL 6034462, at *8 (E.D.N.Y. Dec. 5, 2011) (concluding that the plaintiff's "difficulty dressing herself" does not rise to the level of a serious short-term injury).  Because plaintiff has failed to submit any competent medical evidence that he sustained an injury that prevented him from performing his usual activities for ninety days during the 180 days immediately following the accident, plaintiff has not established a triable issue of fact under the last "serious injury" category.

In conclusion, plaintiff failed to meet his burden of establishing that he sustained a serious injury caused by the accident.  Accordingly, the Court grants defendant's motion for summary judgment.

## II.    Plaintiff's Partial Motion for Summary Judgment

In his cross-motion, plaintiff contends that defendant was negligent in causing the

accident and that plaintiff is entitled to damages in the amount of $10,000 for the replacement value of his vehicle.  *See* Pl. Mot., Dkt. 125 at ECF page 5.

When parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

As noted above, to prevail on a negligence claim under New York law, a plaintiff must establish that (1) the defendant owed plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach was the proximate cause of his damages.  *See Lerner v. Fleet Bank*, N.A., 459 F.3d 273, 286 (2d Cir. 2006).  "New York law imposes on operators of motor vehicles a duty of reasonable care taking into account the circumstances of the situation." *Velasquez v. United States Postal Serv.*, 155 F. Supp. 3d 218, 227 (E.D.N.Y. 2016) (internal citations omitted).  "Generally, whether a driver has conformed to the requisite standard of due care is a question of fact necessitating a trial." *Jin Yue You v. Pedro Teixeira, Inc.*, No. 17-CV-6028, 2020 WL 2732032, at *2 (S.D.N.Y. May 26, 2020).  "Sharp conflicts of evidence regarding the circumstances of a vehicle collision present questions of fact and credibility that properly belong to the jury." *Son v. Lockwood*, No. 07-CV-4189, 2008 WL 5111287, at *5 (E.D.N.Y. Nov. 26, 2008) (internal quotation marks and citations omitted).

Here, the parties dispute how the subject collision occurred, including where the accident took place, the positioning and speed of the two vehicles as they came into contact, and, most importantly, the proximate cause of the accident.  Plaintiff testified that he was traveling northbound in the right lane of three lanes of traffic on the Van Wyck.  He asserts that the driver

of the school bus, Marfak, was merging onto the Van Wyck and unlawfully entered his lane, hitting the right front of plaintiff's vehicle with the left front of the school bus.  Plaintiff remained in the right lane for the entire time he was on the Van Wyck, according to plaintiff. *See* Lifchits Dep., Dkt. 123-10 at ECF pages 17-18.[17]

On the other hand, Marfak testified that he was traveling northbound on the Van Wyck in the middle lane of three lanes of traffic in an area where three lanes merge into two lanes. According to Marfak, plaintiff's vehicle attempted to merge into the middle lane, where the school bus was located, from the left of the school bus, and struck the left front driver's side of the yellow school bus with the right front of plaintiff's vehicle.  The school bus was stationary at the time of impact.  Marfak testified that the school bus had been in, and remained in the middle lane of three lanes from the time it entered onto the Van Wyck from the Belt Parkway East.  *See* Marfak Dep., Dkt. 123-9 at ECF pages 43-44, 74.

Based on the testimonies of the two drivers, plaintiff and Marfak, there are issues of fact as to how the accident occurred.  According to plaintiff, Marfak is at fault for the accident because the school bus entered into plaintiff's lane, which was already occupied by plaintiff's vehicle.  According to Marfak, plaintiff caused the accident by entering from the left lane into the middle lane, which was already occupied by the school bus.  The parties' conflicting accounts of the accident are captured in the police report:  "AT TPO VEHICLE 1 [plaintiff's vehicle] STATES HE WAS MERGING FROM 3 LANES TO 2 LANES WHEN VEHICLE 2 [Marfak's vehicle] SIDE SWIPED HIM.  VEHICLE 2 [Marfak's vehicle] STATES HE WAS MERGING FROM 3 LANES TO 2 LANES WHEN VEHICLE 1 [plaintiff's vehicle]

---

[17] Plaintiff's testimony and the diagram he submitted place the school bus to the right of plaintiff's vehicle.  *See* Lifchits Dep., Dkt. 123-10 at ECF pages 19-20; Crash Diagram, Dkt. 123-12 at ECF page 10.  However, when asked at his deposition whether the school bus was on his right, plaintiff responded, "no."  *See* Lifchits Dep., Dkt. 123-10 at ECF page 19.

SIDESWIPED HIM.  NO INJURIES, OFFICER DID NOT WITNESS ACCIDENT."  Dkt. 123-12 at ECF page 1.

The evidence, then, is entirely contradictory as to the cause of the accident.  It sets up a textbook, "he said, he said" situation that is inappropriate for resolution on summary judgment.  *See Magan v. Lufthansa German Airlines*, 339 F.3d 158, 166 (2d Cir. 2003) (reversing summary judgment where court credited one witness's account over another).  That aspect of plaintiff's cross-motion that seeks summary judgment as to liability raises genuine disputes of material fact that cannot be resolved by motion.  *See Du v. Party Perfect Rentals LLC*, No. 23-CV-88, 2024 WL 1164437, at *5 (E.D.N.Y. Mar. 19, 2024) (denying plaintiff's motion for summary judgment); *Guerrero v. Loiacono*, 688 F. Supp. 3d 50, 64 (E.D.N.Y. 2023) (same); *Mason*, 2022 WL 17489206, at *4 (denying motion for summary judgment where "there are clearly questions of fact regarding how the Accident occurred").  The Court denies plaintiff's partial motion for summary judgment.

## Conclusion

For the reasons stated above, the Court grants defendant's motion for summary judgment and the action is dismissed.  Plaintiff's cross-motion for summary judgment is denied.  The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED**

Dated: Brooklyn, New York
         September 20, 2024

                              s/ James R. Cho
                              James R. Cho
                              United States Magistrate Judge

32